UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BONNIE CHRISTINE POUDRIER,
    Plaintiff,
    v.
NANCY A. BERRYHILL, Acting Commissioner of Social Security,
    Defendant.

No. 3:18-cv-01384 (MPS)

**RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND/OR REMAND (ECF No. 21) AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (ECF No. 23)**

In this appeal from the Social Security Commission's denial of supplemental security income and disability insurance benefits, plaintiff Bonnie Christine Poudrier argues that the Administrative Law Judge ("ALJ") (1) violated the treating physician rule; and (2) failed to provide the limitations endorsed by the treating physician to the vocational expert. I agree with Ms. Poudrier's first argument and remand the case to the Commissioner.

I assume familiarity with Ms. Poudrier's medical history, as summarized in Plaintiff's Summary of Facts, ECF No. 21-1 at 1–2, and supplemented by the Commissioner, ECF No. 23-2, both of which I adopt and incorporate herein by reference. I also assume familiarity with the ALJ's opinion, the record, and the five sequential steps used in the analysis of disability claims. I cite only those portions of the record and the legal standards necessary to explain this ruling.

**I. STANDARD OF REVIEW**

"A district court reviewing a final . . . decision pursuant to . . . 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, a district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability

benefits. *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court's function is to ascertain whether the correct legal principles were applied in reaching the decision, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). The Second Circuit has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citation and quotation marks omitted). Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record." *Id.*

## II. DISCUSSION

### A. Treating Physician Rule

Ms. Poudrier argues that the ALJ failed to comply with the treating physician rule[1] in his analysis of the opinions of Dr. David Grise. I agree.

The analysis under the treating physician rule follows a two-step process. First, "the ALJ must decide whether the opinion is entitled to controlling weight." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d

---

[1] Because this claim was filed before March 27, 2017, the treating physician rule applies here. *See Claudio v. Berryhill*, No. 3:17CV1228(MPS), 2018 WL 3455409, at *3 n.2 (D. Conn. July 18, 2018) ("Since [the plaintiff] filed her claim before March 27, 2017, I apply the treating physician rule under the earlier regulations.").

Cir. 2008) (internal citation and quotation marks omitted). Second, "if the ALJ decides the opinion is not entitled to controlling weight, [he] must determine how much weight, if any, to give it." *Estrella*, 925 F.3d at 95. In doing so, "[the ALJ] must explicitly consider the following, non-exclusive '*Burgess* factors': '(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* at 95-96 (citations omitted). After considering these factors, the ALJ must "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal citations, quotation marks, and alterations omitted). At both steps, "the ALJ must 'give good reasons in [his] notice of determination or decision for the weight [he gives the] treating source's [medical] opinion." *Estrella*, 925 F.3d at 96 (citation and internal quotation marks omitted).

An ALJ's failure to "explicitly" apply the *Burgess* factors is a "procedural error." *Id.* If the "Commissioner has not [otherwise] provided 'good reasons' for [the] weight assignment," the appropriate remedy is remand for the ALJ to "comprehensively set forth [his] reasons." *Id.*; *see also Guerra v. Saul*, 778 Fed. Appx. 75, 77 (2d Cir. 2019) ("To put it simply, a reviewing Court should remand for failure to explicitly consider the *Burgess* factors unless a searching review of the record shows that the ALJ has provided 'good reasons' for its weight assessment."); *Meyer v. Commissioner of Social Security*, 2019 WL 6271721, at *2 (2d Cir. Nov. 25, 2019) ("A reviewing court should remand for failure to consider explicitly the *Burgess* factors unless a searching review of the record shows that the ALJ has provided 'good reasons' for its weight assessment.").

**B. The September 2015 Opinion of Dr. David Grise**

Ms. Poudrier challenges the ALJ's analysis of the September 2015 opinion of Dr. Grise ("the September 2015 Opinion"), Record ("R.") 340–43. In the September 2015 Opinion, Dr. Grise reported that Ms. Poudrier suffered from "obesity, fibromyalgia, [and] COPD," characterized by a "throbbing sensation [in] upper extremity, trunk, back, hips, [and] chronic fatigue – insomnia." R. 340. He opined that she should elevate her legs "8-12 in." for "80%" of an "8-hour working day" due to "low back pain." R. 341. He indicated that she could "[o]ccasionally" lift less than 10 lbs., could "[r]arely" lift 10 lbs., and could "[n]ever" lift anything heavier. *Id.* He wrote that she could sit only 10 minutes at one time and less than 2 hours total in an 8-hour working day, and that she could stand for the same time increments. R. 342. He also estimated that she would need to take 20 five-minute breaks during a working day due to "[m]uscle weakness," "[c]hronic fatigue," and "[p]ain/paresthesias, numbness." *Id.* He opined that she was "likely to be off task" for "25% or more" of a typical workday, and that she was "[i]ncapable of even 'low stress' work" because she was "very anxious" and "depressed." R. 343. Finally, he estimated she would likely "be absent from work as a result of the impairments . . . [m]ore than four days per month." *Id.*

The ALJ gave Dr. Grise's opinion "little weight" because "his opinions are overly restrictive and therefore inconsistent with the record as a whole." R. 19. Contrary to Dr. Grise's opinion, the ALJ found that Ms. Poudrier had the "residual functional capacity to perform light work," with some limitations regarding standing and walking. R. 16. There is substantial evidence to support the ALJ's finding as to residual functional capacity. For instance, the ALJ pointed to the objective evidence that Ms. Poudrier "presents with good strength, bulk, and tone in her lower extremities, normal gait, normal range of motion of her back, and stable COPD,"

suggesting that Ms. Poudrier retained some ability to sit, stand, and carry. R. 19; *see also* R. 388 (February 5, 2016 physical exam showed normal thoracic back, and "normal range of motion, no tenderness, no edema and no spasm" in her lumbar back, and a normal gait); R. 503 (April 11, 2016 physical exam showed "normal strength. . . . no atrophy and no tremor. . . . normal muscle tone. . . . Coordination and gait normal"). The ALJ also noted that the objective evidence "does not suggest that [Ms. Poudrier] must elevate her legs throughout the day," since physicians including Dr. Grise did not so indicate in their treatment notes and since Ms. Poudrier testified that she was able to leave her house to run errands. R. 20; *see* R. 327 (September 9, 2015 physical exam notes by Dr. Grise do not mention need to elevate legs); R. 502–04 (April 11, 2016 exam by Dr. Bruce Chozick mentions "low back pain" but does not mention need to elevate legs); R. 36 (Ms. Poudrier testified that she drove a car "[e]very other day maybe" to run errands and attend doctor's appointments). Given this evidence of a normal musculoskeletal system and a normal gait, and other physicians' opinions that Ms. Poudrier had more physical capacity than described in Dr. Grise's opinion, there was substantial evidence to support the ALJ's decision not to give Dr. Grise's opinion controlling weight.

The ALJ erred, however, at step two of the test set forth in *Estrella.* That step requires that the ALJ "explicitly consider" the *Burgess* factors in determining how much weight to give the treating physician's opinion. *Estrella*, 925 F.3d at 95. If the ALJ does not explicitly consider the *Burgess* factors and "has not otherwise provided good reasons for [his] weight assignment," then the court cannot "conclude that the error was harmless" and must "remand for the ALJ to comprehensively set forth its reasons." *Id.* at 96 (internal quotation marks omitted).

Here, the ALJ did not explicitly consider three of the four *Burgess* factors, failing to note in his opinion the "frequency, length, nature, and extent of treatment," the "amount of medical

5

evidence supporting the opinion," or "whether the physician is a specialist." *Estrella*, 925 F.3d at 95–96; R. 19–20 (discussing Dr. Grise's opinion in a single paragraph). The failure to consider the length of Dr. Grise's treatment is "especially relevant here" because, as the Second Circuit held in *Estrella*, that factor "is of heightened importance in the context of" depression impairments, which formed part of Dr. Grise's opinion. *Estrella*, 925 F.3d at 97 (explaining that cherry-picking "a few isolated instances of improvement" over the course of a chronic disease is an error). At the time of his September 2015 Opinion, Dr. Grise had treated Ms. Poudrier for eight years, R. 340, but the ALJ did not mention that fact in assigning Dr. Grise's opinion regarding Ms. Poudrier's chronic conditions little weight.

While these procedural errors are not, by themselves, fatal, the ALJ also failed to provide sufficiently "good reasons" for assigning little weight to Dr. Grise's opinion, particularly in light of the length of Dr. Grise's treatment and the nature of Ms. Poudrier's impairments. Although the ALJ acknowledged Ms. Poudrier's fibromyalgia diagnosis, he did not adequately evaluate Dr. Grise's opinion on this point. For instance, the ALJ cites only portions of the treatment notes of Dr. Grise and APRN Jocelyn Libros to support his conclusion that Dr. Grise's "restrictive" opinion was "inconsistent with the record as a whole." He cited a February 5, 2016 physical exam showing normal range of motion in Ms. Poudrier's lumbar back, but he did not address the fact that the APRN Libros noted at that same exam that "Bonnie [Poudrier] presents with increased sciatica . . . . For about a year, she has had increased LBP [lower back pain] and pain down the back of the right buttock and upper leg. She has throbbing pain and shooting pain depending on her movement. She notes it constantly at night. She ge[ts] numbness and tingling down the right leg as well." R. 387. In citing a February 20, 2017 physical exam by Dr. Grise

noting Ms. Poudrier was "well-developed," the ALJ did not address Dr. Grise's note that her musculoskeletal system was "Positive for myalgias, back pain and arthralgias." R. 514.

The ALJ also misapplied the relevant law in assessing Dr. Grise's opinions regarding the severity and effects of Ms. Poudrier's fibromyalgia. His opinion emphasizes the fact that Ms. Poudrier had "no abnormal musculoskeletal findings and no neurological deficits" and "generally normal" physical examinations to support his finding of residual functional capacity. R. 17–18. He states that he gives Dr. Grise's opinion little weight because the "objective medical evidence" shows she "presents with good strength, bulk, and tone in her lower extremities, normal gait, normal range of motion of her back." R. 19. However, the ALJ does not explain whether or how these musculoskeletal findings necessarily contradict Dr. Grise's opinion that Ms. Poudrier suffered from "chronic pain," described as a "throbbing sensation," and from "chronic fatigue – insomnia." R. 340, 343. The Second Circuit has noted that "[i]n stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Green-Younger v. Barnhart*, 335 F.3d 99, 108–09 (2d Cir. 2003); *id.* at 101 n.1 (Fibromyalgia "is also commonly referred to as fibrositis."). Courts have found, therefore, that it is error for an ALJ to "require[] objective evidence for a disease that eludes such measurement." *Ortiz v. Colvin*, No. 3:13 CV 610 JGM, 2014 WL 819960, at *13 (D. Conn. Mar. 3, 2014) ("The ALJ erred basing his rejection of [the treating physician's] opinion regarding plaintiff's fibromyalgia on a lack of objective support in the record."); *Crossman v. Astrue*, 783 F. Supp. 2d 300, 308–09 (D. Conn. 2010) (finding the ALJ "should also consider that the nature of fibromyalgia means that 'one-shot' examinations of fibromyalgia patients can often yield altogether normal results," and that "the ALJ's decision to discount [the treating physician's]

7

opinion was erroneously founded at least in part on the absence of objective evidence"). Based on this precedent, the lack of "objective medical evidence" to support Dr. Grise's opinion regarding the severity of Ms. Poudrier's chronic pain and fatigue was not a good reason to assign the opinion little weight.

The ALJ also states that "the record does not suggest that the claimant would require any significant time off-task during the workday or that she would be absent from work," but does not cite any evidence to contradict Dr. Grise's opinion that she would be. He simply concludes that she did not "present with" her symptoms of "muscle weakness, pain, paresthesias, numbness, chronic fatigue and depression . . . to a significant degree," without citing any evidence. R. 20. To the contrary, Dr. Grise's and APRN Libros's treatment notes from 2014 to 2017 document an ongoing, significant struggle with fibromyalgia and related pain and sleep difficulties:[2]

- Dr. Grise noted on June 26, 2014—albeit before the relevant period—that Ms. Poudrier "continues to complain of chronic myalgias and arthralgias. She appears to be frustrated and depressed." R. 309.

- Dr. Grise noted on May 15, 2015 that Ms. Poudrier "has been complaining of chronic insomnia, nonrestorative sleep, and snoring," and that "she is also complaining of increasing pain in the right hip." R. 329.

- Dr. Grise noted on September 9, 2015: "Fibromyalgia. The patient appears to be quite uncomfortable despite being on Percocet . . . 3 times a day." R. 326.

- Dr. Grise noted on September 9, 2015 that "She has been complaining of diffuse discomfort involving her shoulders and neck back and hips. She has chronic fatigue malaise and insomnia. She appears to be anxious and overtly depressed. . . . She has had difficulty concentrating, unable to sit without moving for any length of time, and is having a great deal of difficulty focusing. . . . [C]hronic [p]ain involving her neck

---

[2] The Second Circuit has noted that such symptoms are consistent with fibromyalgia. *Green-Younger*, 335 F.3d at 108 ("With regard to the issue of [plaintiff's] credibility, her complaints of pain in her back, legs and upper body, fatigue, and disturbed sleep are internally consistent and consistent with common symptoms of fibromyalgia.").

shoulders trunk back as well as her hips. She does complain of some weakness in the legs, chronic fatigue malaise depression and anxiety." R. 327.

- APRN Libros noted on November 4, 2015 that "[s]he continues to take prednisone 10 mg daily for inflammation and pain, but notes that her right hip is getting really painful. She has pain with walking, can't sleep on that side, and has not been able to get relief . . . . Positive for sleep disturbance. . . . Right lateral hip pain with pain in the buttocks as well. . . . paint with weight bearing on the right." R. 322–23.

- APRN Libros wrote on November 16, 2015 that "[s]he is getting pain down the lateral right leg and into the groin now as well. She had spurring on her xray. The more she moves, the worse it gets." R. 318.

- APRN Libros noted on December 21, 2015 that she was "Positive for sleep disturbance" and had "[l]ateral right hip tenderness and pain t/o [throughout] ROM [range of motion]." R. 370.

- APRN Libros noted on February 5, 2016 that "Bonnie presents with increased sciatica . . . . For about a year, she has had increased LBP [lower back pain] and pain down the back of the right buttock and upper leg. She has throbbing pain and shooting pain depending on her movement. She notes it constantly at night. She ge[ts] numbness and tingling down the right leg as well." R. 387.

- APRN Libros wrote on March 3, 2016 that Ms. Poudrier "is having significant pain in the right buttocks and into the right leg. The pain medication does not last 8 hours and the pain is never lower than an 8/10. She is not able to do much except lay in bed." She also noted "[i]ncreased hand pain . . . . She is swollen as well. . . . Bilat[eral] hands with edema to the joints and pain with flexion of the fingers bilat[eral]." R. 481–82.[3]

---

[3] To be sure, there is other evidence in the record suggesting that Ms. Poudrier's fibromyalgia was, at times, under control or less symptomatic. *See, e.g.*, R. 310 (Dr. Grise noted on June 26, 2014 that she "has been doing relatively well on the oxycodone."); R. 349 (At her Social Security Consultative Examination on November 30, 2015, Ms. Poudrier reported that Prednisone was "providing relief" for her fibromyalgia.); R. 350 (Dr. Robert Dodenhoff found on November 30, 2015 that she had no tender fibromyalgia trigger points, a nontender spine, nontender joints, nontender hips with "good ROM [range of motion] bilat[erally]."); R. 388 (On February 5, 2016, APRN Libros found that she had "no tenderness, no edema and no spasm" in her lumbar back); R. 2, 5–6 (Dr. Grise found on February 20, 2017 that Ms. Poudrier's pain "appears to be relatively stable at this point," that she "has lost some weight," that her back "does appear to be doing better," and that her fibromyalgia "is a chronic issue" to be "followed . . . when necessary.").

But the ALJ did not rely on this evidence in rejecting Dr. Grise's opinion, instead arguing that the evidence of "good strength, bulk, and tone in her lower extremities, normal gait, normal range of motion of her back, and stable COPD" contradicted Dr. Grise's restrictive opinion. R. 19. It is not for the Court to provide *post hoc* "good reasons" for the ALJ's weight assignment,

The ALJ did not address or appear to consider the bulk of the evidence relating to Ms. Poudrier's history of fibromyalgia and chronic pain except in passing. He concluded that she "was now doing well with oxycodone," citing Dr. Grise's treatment notes from June 26, 2014, before the relevant period. R. 17. He also mischaracterizes the notes, which state that Ms. Poudrier tried to treat her fibromyalgia with "various [medications] . . . which have been unsuccessful," and that "[s]he has been doing *relatively* well on the oxycodone." R. 310 (emphasis added). The fact that oxycodone was treating her fibromyalgia more effectively than other medication does not suggest that her fibromyalgia did not still restrict her functional capacity. Indeed, treatment notes from 2015 suggest that Ms. Poudrier experienced increased pain that year, as discussed above. Similarly, the fact that Dr. Grise described her "chronic pain" as "relatively stable" on February 20, 2017 merely suggests that her condition had not changed; it does not support the ALJ's finding of an "improvement," nor does it necessarily contradict Ms. Poudrier's testimony regarding her "pain and fatigue." R. 18.

In light of these shortcomings in the ALJ's opinion, I cannot conclude that the ALJ provided sufficient "good reasons" for assigning Dr. Grise's opinion little weight, such that "substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96. Therefore, I find that the ALJ violated the treating physician rule. And though the Commissioner does not make a harmless error argument, ECF No. 23-1, I also find that the ALJ's error was not harmless. A violation of the treating physician rule is harmless where "application of the correct legal standard could lead to only one conclusion" and there is "no reasonable likelihood" that full

---

based on the parties' briefs or its own review of the record. *See Jones v. Astrue*, 647 F.3d 350, 356 (D.C. Cir. 2011) ("For our purposes . . . it is sufficient that the ALJ did not say this and certainly did not explain it. The treating physician rule requires an explanation by the SSA, not the court.") (citing, among others, *S.E.C. v. Chenery Corp.*, 332 U.S. 194 (1947)).

compliance with the rule would change the ALJ's determination. *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010). Here, in addition to Dr. Grise's opinion, the record arguably contains substantial evidence to support the view that Ms. Poudrier's fibromyalgia, which the ALJ found was a severe impairment, along with her other impairments, precluded her ability to work. *See, e.g.*, R. 41–44, 46, 50, 52 (Ms. Poudrier's hearing testimony regarding her pain); R. 318, 387 , 481–82 (treatment notes by APRN Libros regarding ongoing pain); *see also Green-Younger,* 335 F.3d 99, 108 (2d Cir. 2003) ("[Plaintiff's] complaints of pain in her back, legs, and upper body, fatigue, and disturbed sleep are internally consistent and consistent with common symptoms of fibromyalgia. [The treating physician's] diagnosis of fibromyalgia bolsters the credibility of [the plaintiff's] complaints.").

Because I conclude that the ALJ did not follow the treating physician rule with respect to Dr. Grise's September 2015 Opinion and that the error was not harmless, the case is remanded to the Commissioner for further administrative proceedings consistent with this ruling. I do not reach Ms. Poudrier's other arguments "because upon remand and after a de novo hearing, [the ALJ] shall review this matter in its entirety." *Delgado v. Berryhill*, No. 3:17CV54(JCH), 2018 WL 1316198, at *15 (D. Conn. Mar. 14, 2018).

## III.   CONCLUSION

For the reasons set forth above, Ms. Poudrier's motion to reverse and/or remand, ECF No. 21, is GRANTED to the extent that the case is remanded to the Commissioner, and the Commissioner's motion to affirm, ECF No. 23, is DENIED.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            March 6, 2020